IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NANCY BIELAWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 2513 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| MIDLAND FUNDING LLC and | ) | |
| MIDLAND CREDIT MANAGEMENT, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nancy Bielawski brought this suit pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(8), alleging that Defendants Midland Funding LLC ("Midland") and Midland Credit Management, Inc. ("MCM") are debt collectors who failed to report her dispute of a delinquent debt to TransUnion, a credit reporting agency. Both sides have filed cross-motions for summary judgment. For the reasons stated herein, Bielawski's motion [31] is granted in part and denied in part, and Defendants' motion [38] is denied.

## I.    Background[1]

Before we begin, the Court notes that both parties fall short of complying with the dictates of N.D. Ill. Local Rule 56.1. The rule requires the parties to file statements of fact and responses supported by reference to evidence in the record. In numerous places in their Local Rule 56.1 statements, the parties take inconsistent

---

[1]     The following facts are undisputed or deemed admitted except where otherwise noted.

positions with respect to their own facts and cite evidence unsupportive of their positions. *See*, *e.g.*, *infra* Section I.A at 4 n.3, 4 n.5, 4–5 n.6, 5 n.7; Section I.B at 7–8 & n.10. The Court requires strict compliance with Local Rule 56.1, *see Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006), and will note when certain material factual statements are stricken or deemed admitted due to noncompliance with the rule. The ramifications of the parties' actions are significant, as we shall see, and provide a cautionary lesson to the litigants that appear in this district.

Turning to the facts here, Bielawski incurred credit-card debt with Citibank N.A. ("Citibank") that she later became unable to pay. Pl.'s LR 56.1(a) Stmt. Facts ("Pl.'s SOF") ¶¶ 9–10, ECF No. 32. After the account went into default, Midland purchased it. Pl.'s SOF ¶ 11. Midland is a debt purchaser that does not have any employees of its own; instead, it hires MCM to service and collect debt. Defs.' LR 56.1(a) Stmt. Facts ("Defs.' SOF") ¶¶ 2, 5–6, ECF No. 40. In this case, Midland assigned Bielawski's debt to MCM for collection. Pl.'s SOF ¶ 11.

## A. Bielawski's Dispute Letter and Defendants' Communications with TransUnion

After MCM began attempting to collect the debt from Bielawski, she retained counsel. Defs.' SOF ¶ 14. Bielawski's counsel sent a letter addressed to Midland on March 8, 2018, containing the following statement about Bielawski's case:

> This client regrets not being able to pay, however, at this time they are insolvent, as their monthly expenses exceed the amount of income they receive, and the debt reported on the credit report is not accurate. If their circumstances should change, we will be in touch.

Pl.'s SOF ¶ 12; Pl.'s Ex. D ("Dispute Letter"), ECF No. 32-4.  Defendants received the letter the same day.  Pl.'s SOF ¶ 13.  This letter marked the first time Bielawski communicated her dispute to Defendants.  Defs.' SOF ¶¶ 35–36.  Prior to this time, Bielawski had not contacted her original creditor or any credit bureau to dispute the amount of the debt.[2]  *Id.* ¶ 19.

MCM follows certain policies with respect to processing and reporting disputes. Its Consumer Support Services department reports approximately 6.7 million accounts to various credit bureaus and processes approximately 152,000 disputes each month related to these accounts.  *Id.* ¶ 28.  Its policies require disputes to be addressed internally within 48 to 72 hours, and to be reported to third parties such as credit bureaus within 30 days.  *Id.* ¶ 30.  Furthermore, on the Monday morning following the first and third Sunday of each month, MCM finalizes a list of data from consumer-debt accounts, including any disputes on the accounts, to be furnished to credit bureaus.  *Id.* ¶ 22.  After the list is finalized on Monday morning, it is furnished to credit bureaus the following Friday.  Pl.'s SOF ¶ 20.  During the intervening week after finalizing the list, but before furnishing it to credit bureaus, MCM "engages in quality control checks to ensure that the data is accurate."  Defs.' SOF ¶ 29.

This set of policies impacted the way MCM addressed Bielawski's dispute. MCM furnished data from Bielawski's debt account to TransUnion on March 9, 2018,

---

[2]     Defendants assert that, in fact, Bielawski has no quarrel with the amount of the debt and merely does not understand that Midland purchased the debt from Citibank.  *See* Defs.' SOF ¶¶ 15, 32, 35–36.  As will be discussed, *see infra* Section III.A, this fact has no bearing on the Court's analysis.

the day after receiving Bielawski's Dispute Letter.[3]  *See* Defs.' SOF ¶ 23; Consumer Reporting Data at 2.  But MCM did not mark Bielawski's account as disputed until March 13; furthermore, based on MCM's policies, the March 9 report was finalized on Monday, March 5, 2018—three days before Defendants received the Dispute Letter.[4]  Defs.' SOF ¶¶ 21–22.

On March 14, 2018, an MCM representative "took further steps" to process Bielawski's dispute, but "inadvertently removed" the dispute code from the system.[5] *Id.* ¶ 24.  By March 21, MCM placed the dispute code back on Bielawski's account. *Id.* ¶ 26.  But Defendants furnished Bielawski's debt information to TransUnion again on Friday, March 23, Pl.'s SOF ¶ 15, in a report that would have been finalized the prior Monday, March 19, *see* Defs.' SOF ¶ 22.  Not surprisingly, the March 23 report did not contain Bielawski's dispute.[6]  *See* Pl.'s SOF ¶¶ 15–17.  The dispute was

---

[3]    Bielawski disputes that her data was furnished on March 9, asserting that it was instead furnished on March 23.  *See* Pl.'s LR 56.1(b) Resp. Defs.' SOF ¶ 23, ECF No. 41.  But the evidence shows, consistent with MCM's reporting practice, that the data was furnished on *both* March 9 *and* March 23.  Defs.' Ex. 6, Consumer Reporting Data at 2, ECF No. 40-6. Bielawski offers no evidence to the contrary.  *See* Pl.'s LR 56.1(b) Resp. Defs.' SOF ¶ 23. Accordingly, this fact is deemed admitted.  *See* N.D. Ill. Local Rule 56.1(b)(3)(B).

[4]    The Court takes judicial notice of the days of the week in March 2018.  *See* Fed. R. Evid. 201(b).

[5]    Bielawski disputes that the code was inadvertently removed, citing the deposition of a corporate representative to establish that "MCM admitted that they could not remember why they had not reported the account as being in dispute."  Pl.'s LR 56.1(b) Resp. Defs.' SOF ¶ 24.  But the deposition to which Bielawski cites is not attached to her response, nor can the Court locate it anywhere else in the record.  Accordingly, Defs.' SOF ¶ 24 is deemed admitted. So is Defs.' SOF ¶ 7, which Bielawski similarly attempts to refute by citing only the missing deposition.  *See* N.D. Ill. Local Rule 56.1(b)(3)(B).

[6]    It is unclear whether Defendants intend to argue that the dispute *was* included in the March 23 report.  In response to Bielawski's statement that the dispute was not reported, they state: "Undisputed that on March 23, 2018 the information that MCM furnished to the

reflected, however, in Defendants' next report to TransUnion on April 6, 2018. Defs.' SOF ¶ 27.

On April 2, 2018, Bielawski purchased her TransUnion credit report and discovered that her debt to Midland was being displayed as undisputed. Pl.'s SOF ¶¶ 16–17. Bielawski contends that the fifteen-day delay between Defendants' receipt of her dispute and their conveying it to TransUnion has caused her "annoyance, aggravation, humiliation[,] and emotional distress."[7] *Id.* ¶ 19.

## B. Defendants' Status as Debt Collectors

MCM does not dispute that, "in certain circumstances and in certain instances," including in Bielawski's case, it "acts as a debt collector as defined by the FDCPA." Defs.' LR 56.1(b) Resp. Pl.'s SOF ¶ 6. But the parties dispute whether Midland is a "debt collector." Pl.' SOF ¶ 3; Defs.' LR 56.1(b) Resp. Pl.'s SOF ¶ 3.

It is undisputed that Midland holds a collection-agency license from the State of Illinois. Pl.'s SOF ¶ 3; Defs.' LR 56.1(b) Resp. Pl.'s SOF ¶ 3. But according to

---

credit bureaus indicated a dispute on Plaintiff's account." Defs.' LR 56.1(b) Resp. Pl.'s SOF ¶ 17, ECF No. 37. But the material to which they cite indicates only that the dispute was reported to TransUnion at some point before Bielawski filed suit, and specifically, in Defendants' report to TransUnion on April 6, 2018. *See id.* (citing Defs.' Answer ¶ 23, ECF No. 10; Defs.' SOF ¶ 27). Bielawski does not contend that the dispute was omitted from the April 6 report, *see* Pl.'s LR 56.1(b) Resp. Defs.' SOF ¶ 27, and the only evidence about the March 23 report suggests that the dispute was not contained within that report. *See* Defs.' SOF ¶¶ 22, 25–26; Pl.'s Ex. E, 4/2/18 TransUnion Credit Report, ECF No. 32-5. Accordingly, it is deemed undisputed that Defendants did not furnish Bielawski's dispute to TransUnion in their report of March 23, 2018. *See* N.D. Ill. Local Rule 56.1(b)(3)(B).

[7]    Defendants dispute this fact as being based on Bielawski's "own self-serving testimony." Defs.' LR 56.1(b) Resp. Pl.'s SOF ¶ 19. Testimony is, by its nature, "self-serving," but that does not make it inadmissible. *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("As we have repeatedly emphasized over the past decade, the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.").

5

Midland, it does not have any direct contact with consumers regarding debt-collection efforts.  Defs.' SOF ¶ 6.  Rather, it says, "[a]ny actions taken on accounts owned by Midland Funding are taken by MCM," which devises its own collection strategies without Midland's input.  *Id.* ¶¶ 7–8.  Bielawski rejects these assertions.  Pl.'s LR 56.1(b) Resp. Defs.' SOF ¶¶ 6–8.

Bielawski first points out that Midland regularly files collections lawsuits in the Circuit Court of Cook County.  *See* Docket Search, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, http://www.cookcountyclerkofcourt.org/CourtCaseSearch/Docket Search.aspx (select "Civil Division," search by name, type "Midland Funding," and select "Plaintiff").[8]  Midland does not dispute this assertion.

Bielawski next contends, and Midland disputes, that Midland "derives all of its revenue from purchasing and recovering portfolios of defaulted receivables from consumers."  Pl.'s SOF ¶ 22; Defs.' LR 56.1(b) Resp. Pl.'s SOF ¶ 23.  To support this assertion, Bielawski relies upon SEC filings from Encore Capitol Group, Inc. ("Encore").  Pl.'s SOF ¶ 22; *see* Pl.'s Ex. M, SEC filings excerpt, Encore Capital Group, Inc., Annual Report (Form 10-K) (Dec. 31, 2016) ("Encore SEC Filings"), ECF No. 32-13.  But neither Bielawski nor the SEC filings explain Encore's relationship to Midland.[9]  Not only that, even if the SEC filings showed that all of Encore's revenues

---

[8]     The Court takes judicial notice of these records as requested by Bielawski.  *See Skinner v. LVNV Funding, LLC*, No. 16 C 7089, 2018 WL 319320, at *2 (N.D. Ill. Jan. 8, 2018) (explaining that it is proper to take judicial notice of a court's electronic docket because the facts contained within it are "not in dispute and their accuracy can be easily confirmed").

[9]     Other cases have described Encore as Midland's parent company.  *See Fuller v. Midland Credit Mgmt. Inc.*, No. 11 C 5111, 2014 WL 883757, at *1 (N.D. Ill. Mar. 6, 2014).

come from defaulted receivables—a dubious proposition, *see* Encore SEC Filings at 30 ("Selected Financial Data")—they say nothing about *Midland's* revenue stream. Accordingly, Bielawski has failed to support her SOF ¶ 23 with admissible evidence, and it is stricken. *See* N.D. Ill. Local Rule 56.1(a)(3).

Finally, Bielawski also asserts that Midland attempted to collect her debt by reporting it to TransUnion. Pl.'s SOF ¶ 15. This factual dispute is particularly vexing, because Defendants agree that Bielawski's statement of fact is "undisputed," Defs.' LR 56.1(b) Resp. Pl.'s SOF ¶ 15, but simultaneously assert that it was actually MCM that reported the debt to TransUnion, Defs.' SOF ¶¶ 22–23, 33. Normally, based on Defendants' failure to contest Bielawski's version, the Court would deem it undisputed. But here, Bielawski's version is not supported by the evidence she cites. Bielawski points to (1) Defendants' Answer, which states that it was *MCM* that furnished her data to TransUnion, and (2) her TransUnion credit report, which lists the Midland debt but does not indicate where the information came from.[10] *See* Pl.'s SOF ¶ 15 (citing Defs.' Answer ¶ 22; 4/2/18 TransUnion Credit Report). The Court cannot deem admitted facts which are unsupported by the record. Accordingly, Bielawski's SOF ¶ 15 is stricken as unsupported, as are her responses to Defendants' statements of fact based on the same evidence. *See* Pl.'s LR 56.1(b) Resp. Defs.' SOF

---

The Court declines to take judicial notice of this fact, since it is not capable of ready determination and may be subject to reasonable dispute. *See* Fed. R. Evid. 201(b).

[10] Not only that, but in another context, Bielawski seems to agree that it was MCM that furnished the data. In response to a statement that "MCM acted swiftly in processing" her dispute, she states: "MCM received the dispute letter on March 8, 2018 but *communicated credit information on March 23, 2018 to TransUnion . . . .*' Pl.'s LR 56.1(b) Resp. Defs.' SOF ¶ 20 (emphasis added).

¶ 8.  The Court deems it undisputed that MCM, not Midland, furnished Bielawski's debt information to TransUnion.  *See* N.D. Ill. Local Rule 56.1(a)(3), (b)(3)(B).

## II.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015).  To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor."  *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).  In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it."  *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).  The Court must not make credibility determinations or weigh conflicting evidence.  *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

Moreover, Rule 56 requires the district court to grant a motion for summary judgment after discovery "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party has the initial burden of establishing that there is no

genuine issue of material fact. *See id.* Once the moving party has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmoving party must then set forth specific facts showing that there are disputed material facts that must be decided at trial. *See id.* at 321–22.

## III. Analysis

The FDCPA prohibits any "debt collector" from "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a debt is disputed." 15 U.S.C. § 1692e(8). To establish Defendants' liability under this section, Bielawski must show that they are both "debt collectors" and that they knew or should have known that Bielawski's debt was disputed, but failed to communicate the dispute when reporting the debt to TransUnion. *See id.*; *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 346 (7th Cir. 2018). Additionally, Defendants may defeat Bielawski's claim by showing that their error was "not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

Defendants have moved for summary judgment, arguing that Bielawski has failed to set forth sufficient evidence that Midland is a "debt collector" or that Defendants failed to communicate a known dispute to TransUnion; they further argue that they are entitled to a *bona fide* error defense based on their policies and procedures. Bielawski has cross-moved for summary judgment, arguing that

Defendants have failed to sufficiently refute their liability under § 1692e(8) or establish a *bona fide* error defense.

### A. No Genuine Issue of Fact Exists Regarding Defendants' Violation of § 1692e(8)

Neither Midland nor MCM disputes that they both received Bielawski's Dispute Letter on March 8, 2018. *See* Defs.' LR 56.1(b) Resp. Pl.'s SOF ¶ 13. But Defendants argue that, for several reasons, the letter was insufficient to put them on notice of a dispute, meaning that they cannot be liable for failing to communicate the dispute to TransUnion. First, they contend, the letter failed to explain the basis for Bielawski's dispute; in fact, it does not even use the term "dispute." Defendants point to requirements for disputing debt under the Fair Credit Reporting Act ("FCRA"), arguing that these provisions provide guidelines for what information must be included in a valid dispute under the FDCPA. Moreover, Defendants argue that Bielawski's dispute was invalid because there is no evidence that the amount of the debt reported to TransUnion was incorrect.

Each of these arguments was rejected by the Seventh Circuit in *Evans*, 889 F.3d 337. There, the Seventh Circuit considered language nearly identical to that in Bielawski's Dispute Letter: "This client regrets not being able to pay, however, at this time they are insolvent, as their monthly expenses exceed the amount of income they receive, and the amount reported is not accurate. If their circumstances change, we will be in touch." *Id.* at 342–43; *compare* Dispute Letter. The Seventh Circuit flatly rejected the notion that this language did not indicate a disputed debt, explaining:

> True, § 1692e(8) does not define "dispute" or provide a procedure for consumers to follow to dispute their debt. But the ordinary meaning of "dispute" is clear. *See Dispute*, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/dispute (last visited April 23, 2018) (defining "dispute" as "to call into question or cast doubt upon"). When plaintiffs said "the amount reported is not accurate," they "call[ed] into question" the amount [the defendant] claimed they owed—in other words, they *disputed* the debt. There is simply no other way to interpret this language.

*Evans*, 889 F.3d at 346. Furthermore, the court clarified, § 1692e(8) does not require debtors to use the word "dispute," or to conform to other statutes—like the FCRA—that give specific meaning to that term. *See id.* at 347–48.

The Court of Appeals also rejected Defendants' argument that the dispute must be valid—in other words, that the plaintiff must be correct—to support liability under § 1692e(8). *See id.* at 346–47. The crux of § 1692e(8) is whether the defendant knew the debt was disputed and failed to communicate that dispute, not whether the dispute was accurate. Accordingly, "[s]ection 1692e(8) does not require an individual's dispute be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt." *Id.* at 347. Here, by stating that the "debt . . . is not accurate," Bielawski conveyed a dispute to Defendants. Whether or not that dispute will ultimately succeed bears no relevance to Defendants' obligations under § 1692e(8).

Defendants press another argument, however, that was not addressed in *Evans*. The language of the Dispute Letter is not just vague, they contend, but is actually sanctionable. Defendants point to the decision of a court in the Western District of Texas, which sanctioned Bielawski's counsel for sending a substantially

11

identical letter to a different debt collector. *Tejero v. Portfolio Recovery Assocs. LLC*, No. AU-16-CV-767-SS, 2018 WL 1612856, at *3–4 (W.D. Tex. Apr. 2, 2018). That court held:

> [T]he evidence shows Plaintiff's counsel is involved in a scheme to force settlements from debt collectors by abusing the FDCPA. Plaintiff's counsel represents unsophisticated debtors who cannot afford to pay their credit card debt and sends the same ambiguously worded letter on each debtor's behalf to the respective debt collector. Viewing the letter as it was intended by Plaintiff's counsel, the debt collector understands the letter to say the debtor cannot afford to pay the debt. The debt collector then fails to mark the debt as disputed and Plaintiff's counsel files suit for violation of the FDCPA. Facing the high costs of discovery and trial, the debt collector settles the lawsuit, paying the debtor's attorney's fees. . . . Rather than merely holding debt collectors accountable for abusive practices, Plaintiff's counsel deliberately exposes debt collectors to liability, inhibiting debt collection and increasing its costs.

*Id.* at *4.

The *Tejero* court's conclusion is premised entirely on its finding that the language in the letter is vague and inconsistent. This is irreconcilable with, and contrary to, the Seventh Circuit's holding in *Evans*. And because it is the Seventh Circuit that this Court must follow, it must conclude that the letter sent by Bielawski's counsel creates a valid dispute under § 1692e(8). *See Evans*, 889 F.3d at 346–48.

That leaves only Defendants' argument that Bielawski's dispute was not genuine. In particular, Defendants point to Bielawski's deposition testimony, in which she described her confusion as to why she owed a debt to Midland despite having originally taken out the credit card from Citibank. *See* Defs.' SOF ¶ 15; Defs.' Ex. 3, Bielawski Dep. at 19:11–20:10, 39:8-23, ECF No. 40-3. Furthermore,

Defendants point out, Bielawski never contacted Citibank or any credit bureau prior to contacting Midland to dispute the amount of the debt. Defs.' SOF ¶ 19. Accordingly, Defendants argue, Bielawski's true dispute was in regards to the rightful owner of the debt, not the amount.

The legal basis for this argument is unclear, and Defendants cite no authority to support it. Nothing in § 1692e(8) requires a dispute to be "genuine"; furthermore, nothing in that section prevents a debtor from disputing multiple aspects of a debt. Additionally, to the extent this is intended to be an "unclean hands" defense, this Court agrees with other courts that such a defense is unavailable under the FDCPA. *See Francisco v. Midland Funding, LLC*, No. 17 C 6872, 2019 WL 1227791, at *2–3 (N.D. Ill. Mar. 15, 2019) (*Francisco II*) (collecting cases). This is because, as the Seventh Circuit has repeatedly explained, "[n]o section of the [FDCPA] requires an inquiry into the worthiness of the debtor, or purports to protect only 'deserving' debtors." *Bass v. Stolper, Koritzinsky, Brester & Neider, S.C.*, 111 F.3d 1322, 1330 (7th Cir. 1997). Rather, "the sole wrong intended to be remedied by the FDCPA is debt collector abuse." *Id.*; *see Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("We must focus on the debt collector's misconduct, not whether the debt is valid[.]"). An unclean hands defense, which focuses on the debtor's deeds, is inconsistent with the FDCPA's singular focus on the conduct of the debt collector. *See Francisco*, 2019 WL 1227791, at *2–3; *Nyberg v. Portfolio Recovery Assocs., LLC*, No. 3:15-cv-00175-PK, 2016 WL 3176585, at *6 (D. Or. June 2, 2016); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 749 (N.D. Ill. 2003).

13

It is undeniable that Bielawski sent a letter to Defendants disputing the debt at issue. It is also undisputed that both Defendants received the letter, yet twice transmitted Bielawski's debt information to TransUnion without identifying the dispute. Accordingly, Bielawski is entitled to summary judgment as to this issue.

### B. No Genuine Issue of Fact Exists Regarding Defendants' *Bona Fide* Error Defense

Notwithstanding the above, Defendants may escape liability if they are able to show that "the violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). To do so, Defendants must prove (1) lack of intent, (2) *bona fide* error, and (3) reasonable procedures. *Evans*, 889 F.3d at 349 (citing *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005)).

Defendants assert that, although they received notice of Bielawski's dispute, it was not transmitted to TransUnion in MCM's March 23, 2018, report because the dispute code was inadvertently removed from Bielawski's account prior to the report's transmission. This occurred, Defendants state, despite MCM maintaining clear procedures about when and how to mark an account as disputed.

Bielawski does not contest the unintentional or *bona fide* nature of Defendants' error. She argues instead that Defendants failed to maintain policies or procedures reasonably designed to prevent similar errors like it from occurring. Specifically, she points out, by "locking in" data on Mondays and then reporting it to credit bureaus on Fridays, "every dispute received or processed on Tuesday, Wednesday, Thursday, and Friday of the reporting week . . . might not be noted in Friday's report." Pl.'s

Combined Resp. Opp'n Defs.' Mot. Summ. J. & Reply Supp. Pl.'s Mot. Summ. J. at 13,
ECF No. 42.

Two courts in this district have recently concluded that Defendants' biweekly
reporting practice is not reasonably calculated to avoid errors under § 1692e(8). *See
Valenta v. Midland Funding, LLC*, No. 17 C 6609, 2019 WL 1429656, at *5–6 (N.D.
Ill. Mar. 29, 2019); *Francisco v. Midland Funding, LLC*, No. 17 C 6872, 2019 WL
498936, at *5 (N.D. Ill. Feb. 8, 2019) (*Francisco I*). As the court in *Francisco I*
explained:

> MCM works with such a volume of accounts that it is most practical to
> report disputes to credit bureaus in batches. MCM compiles those
> disputes on Monday and sends them to bureaus on Friday, with a
> quality-control check somewhere between. Considering the volume of
> disputes MCM could receive or process between finalizing and
> delivering its batch of reports, that policy tolerates the risk of violating
> 15 U.S.C. § 1692e(8) exactly as it did here. Locking in reports on
> Monday and delivering them on Friday means that every dispute
> received or processed on Tuesday, Wednesday, Thursday, and Friday of
> the reporting week (of which there are likely thousands) might not be
> noted in Friday's report to credit bureaus. [Plaintiff's] letter fell through
> the cracks because MCM designed a system with cracks.

*Id.*

The Court finds this reasoning cogent and sound. Bielawski's dispute was
received by Defendants on Thursday, March 8; but it was not noted in MCM's March
9 report to TransUnion—both because it had not yet been entered into the system,
and because, even if it had been, the March 9 report was already finalized on the
previous Monday. Furthermore, even after the dispute was entered into MCM's
system, it was inadvertently removed. This error was corrected on Wednesday,
March 21, before MCM's next report to TransUnion on Friday, March 23. But the

debt was still erroneously reported as undisputed in the March 23 report, apparently because it had been "locked in" the previous Monday.

Defendants attempt to characterize the error in this case as being solely a human error; "timing is not the issue," they say. Defs.' Reply Supp. Mot. Summ. J. at 7, ECF No. 43. But that is not a plausible understanding of the sequence of events here. True, Bielawski's dispute could have been reported to TransUnion earlier if not for the error of the MCM representative who inadvertently removed the dispute code from the account. But that does not explain why, once the coding error was corrected, Defendants could not have included the dispute information in its impending report to TransUnion. *See Valenta*, 2019 WL 1429656, at *5 ("[T]he trouble with [the defendants'] argument is that it does not address why, once the dispute letter was processed . . . defendant could not then update the information that it planned to transmit to credit bureaus on the following Friday."). As Bielawski points out, MCM is capable of updating dispute information internally within a reasonably short time, *see* Pl.'s SOF ¶ 21, but it apparently chooses not to do so in every case. The problem here arose from the schedule MCM employs to prepare its credit-bureau reports; whether Defendants maintain policies reasonably calculated to avoid human error has no bearing on this question.[11]

---

[11]     Defendants argue that Bielawski has failed to respond to their argument that their dispute-coding policy is calculated to avoid human error, and therefore has waived the issue. But Bielawski did not ignore the issue of the reasonableness of Defendants' policies; instead, she articulated a theory contrary to Defendants', *i.e.*, that the reporting policy, and not the coding policy, was the problem. *See* Pl.'s Combined Resp. Opp'n Defs.' Mot. Summ. J. & Reply Supp. Pl.'s Mot. Summ. J. at 12–13.

Put another way, the problem is not that Defendants simply failed to inform credit bureaus of the dispute within a reasonable time. Rather, the problem is that Defendants—on their own accord—regularly reported Bielawski's debt to TransUnion without ensuring the accuracy of the information being sent for the entire business week leading up to each report. Accordingly, the Court agrees with the holdings of *Valenta* and *Francisco* and concludes that Defendants' policies are not reasonably adapted to ensure that debts reported on Friday contain dispute information received or updated within the prior week.[12]

The Court concludes that Defendants have failed to raise a genuine issue of fact with respect to their *bona fide* error defense, and Bielawski is therefore entitled to summary judgment as to this issue. Furthermore, because MCM does not dispute that it is a "debt collector" and Bielawski has prevailed on both the merits of her § 1692e(8) claim and the *bona fide* error defense, she is entitled to summary judgment against MCM.

### C. A Genuine Issue of Fact Exists Regarding Midland's Status as a "Debt Collector"

The parties have cross-moved for summary judgment as to Bielawski's claim against Midland, whose sole remaining defense is that it is not a "debt collector" as that term is defined by the FDCPA. For the following reasons, both cross-motions are denied.

---

[12] Defendants also claim that "quality control checks" occur during the week between finalizing debt reports on Monday and furnishing them to credit bureaus on Friday. *See* Defs.' SOF ¶ 29. Without more detail, however, the Court cannot conclude that such "checks" are adequate to reasonably guard against errors of the type that occurred here.

Under the FDCPA, the term "debt collector" is defined in two distinct ways: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," (the "principal purpose" definition) or (2) any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects" definition). 15 U.S.C. § 1692a(6). Defendants argue that Bielawski points to no evidence that Midland, as opposed to MCM, is a debt collector subject to the FDCPA. Bielawski, for her part, argues that the record conclusively shows that Midland is a debt collector.

Whether "debt buyers" or "debt purchasers" such as Midland are "debt collectors" under the FDCPA has been the subject of copious litigation, particularly since the Supreme Court's decision in *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017). In *Henson*, the Supreme Court held that the "regularly collects" definition, by its plain terms, applies only to entities that collect debt on behalf of "another." And so, debt buyers that collect debt on behalf of themselves do not fall under this definition. *Id.* at 1721–26.

Accordingly, under *Henson*, a debt buyer such as Midland cannot qualify as a debt collector under the "regularly collects" definition. *See McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 883 (N.D. Ill. 2018). Still, Bielawski argues that Midland's status as a purchaser of delinquent debt conclusively establishes it as a debt collector under the "principal purpose" prong.

In determining whether an entity meets the "principal purpose" definition, courts ask two questions: (1) does the company have a purpose of debt collection at all; and (2) is debt collection "the "most important or influential purpose that the company has[?]" *McAdory v. MNS & Assocs., LLC*, No. 3:17-cv-00777-HZ, 2017 WL 5071263, at *3 (D. Or. Nov. 3, 2017); *see Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 WL 6406594, at *6 (N.D. Ind. Dec. 15, 2017). Courts addressing the first issue consider a variety of factors, such as: (1) licensure as a collection agency, *see Evans v. Portfolio Recovery Assocs., LLC*, No. 15 C 4498, 2016 WL 6833930, at *2 (N.D. Ill. Nov. 20, 2016), *aff'd*, 889 F.3d at 342; (2) whether the entity has sued to recover debt, *see McMahon*, 301 F. Supp. 3d at 884; *Mitchell*, 2017 WL 6406594, at *6; and (3) whether it has employees or employs a debt-collection agency, *see McMahon*, 301 F. Supp. 3d at 883; *Mitchell*, 2017 WL 6406594, at *4. After *Henson*, courts have considered an entity's status as a debt buyer to be among these factors rather than as a dispositive fact. *See Torres v. LVNV Funding, LLC*, No. 16 C 6665, 2018 WL 1508535, at *5 (N.D. Ill. Mar. 27, 2018); *McMahon*, 301 F. Supp. 3d at 883–84; *Skinner*, 2018 WL 319320, at *4; *Mitchell*, 2017 WL 6406594, at *6.

The undisputed evidence establishes that debt collection is at least one of Midland's business purposes. First, Midland is a debt purchaser that does not have any employees of its own; it hires MCM to service and collect debt. *See Torres*, 2018 WL 1508535, at *5; *McMahon*, 301 F. Supp. 3d at 883; *Mitchell*, 2017 WL 6406594, at *5. Additionally, Midland concedes that it holds a collection-agency license in Illinois. And, although it points out that the licensing statute in Illinois, unlike the

FDCPA, governs debt buyers as well as collection agencies, *see* 225 Ill. Comp. Stat. 425/8.5, Midland has unequivocally admitted that it "holds a *collection agency license* from the State of Illinois . . . ." Defs.' Answer ¶ 7 (emphasis added).

Midland also concedes that it regularly brings debt-collection lawsuits. It argues, though, that the cases establishing the relevance of this factor relate to debt-collection lawyers and are inapposite. *See* Defs.' Reply Supp. Mot. Summ. J. at 3. Midland has a point—Bielawski cites cases like *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995), which establish the somewhat irrelevant proposition that the FDCPA "appl[ies] to lawyers engaged in litigation." *Id.* But Bielawski also cites more recent cases in which courts have concluded that *debt buyers* who sue to collect on debts are engaged in debt collection. *See, e.g.*, *McMahon*, 301 F. Supp. 3d at 884; *Skinner*, 2018 WL 319320, at *4; *Mitchell*, 2017 WL 6406594, at *6. These cases are directly on point.[13]

Although Midland's business purpose appears to be at least partly directed toward debt-collection efforts, Bielawski's work does not end there. Instead, she also must show that debt collection is the "most important or influential purpose that the company has." *McAdory*, 2017 WL 5071263, at *3. This requires looking at the percentage of Midland's business that is dedicated to debt-collection as opposed to

---

[13]    Bielawski also cites *Fuller*, 2014 WL 883757, at *1, for the proposition that Midland was "classified" in that case "as a debt collector under the FDCPA due to its seeking enforcement of 'purchased debts against consumers by filing lawsuits.'" Pl.'s Mem. Supp. Mot. Summ. J. at 8, ECF No. 33. Defendants point out that *Fuller* was decided on a motion to dismiss pursuant to Rule 12(b)(6) and that Midland did not dispute its status as a debt collector in that case. Thus, although the *Fuller* court seemingly accepted the proposition that filing lawsuits is relevant to an entity's status as a debt collector, its ruling as to Midland's status does little to move the needle here. *See Fuller*, 2014 WL 883757, at *1.

other activities.  *See Skinner*, 2018 WL 319320, at *4 (noting that, while evidence of lawsuits "may establish Defendant's business involves some debt collection, it provides no basis for establishing the percentage of Defendant's operations that involve debt collection as compared to Defendant's operations as a whole"); *Mitchell*, 2017 WL 6406594, at *6 ("Even if the Court finds that the Plaintiff has sufficiently asserted that LVNV engages in debt collection, the question still remains—is this LVNV's principal purpose of business?").

To start, the Court has already rejected Bielawski's efforts to rely on this scant record to establish as a matter of undisputed fact that Midland derives all of its revenue from its debt-collection business.[14]  *See supra* Section I.B at 6–7.  On the other hand, Midland has not offered any evidence that it engages in any other business.  And it has admitted it has no employees and that it relies entirely on MCM to conduct its debt collection.  From this, a reasonable jury certainly could find for Bielawski on this question, but that is at trial.

At the summary judgment stage, Bielawski bears the burden to offer undisputed facts to prove that Midland's principal business purpose is debt collection. *See Celotex*, 477 U.S. at 322.    Midland need not demonstrate the contrary to circumvent Bielawski's cross-motion.  On this record, Bielawski has not met her burden.  Even if Midland does not have any employees and it relies entirely on MCM to conduct its debt collection business, neither conclusively proves as a matter of law

---

[14]    Bielawski also argues that reporting debt to credit-reporting agencies can support the notion that debt collection is an entity's "principal purpose."  But, as previously explained, Bielawski has failed to support her assertion that Midland, not MCM, reported her debt to TransUnion.  *See supra* Section I.B at 7–8 & n.10.

that Midland has no other business than debt collection or that debt collection is its primary business.[15]  Accordingly, neither side is entitled to summary judgment as to this issue.

### D.    A Genuine Issue of Fact Exists Regarding Midland Funding's Vicarious Liability for MCM's Actions

As a final matter, Bielawski argues that, whether or not Midland is a debt collector in its own right, it can be held vicariously liable for the actions of MCM. Bielawski is not entirely correct.  In *Janetos v. Fulton Friedman & Gullace, LLP*, the Seventh Circuit explained that vicarious liability may attach to require "a debt collector who is independently obliged to comply with the [FDCPA] to monitor the actions of those it enlists to collect debts on its own behalf."  825 F.3d 317, 325 (7th Cir. 2016).  But "a company that is not a debt collector would not ordinarily be subject to liability under the [FDCPA] at all."  *Id.*    Accordingly, Midland may be held vicariously liable for MCM's actions only if (1) it is a "debt collector" under 15 U.S.C. § 1692a(6) and (2) it "enlist[ed] MCM to collect debts on its . . . behalf."  *Janetos*, 825 F.3d at 325; *see Marquez v. Weinstein, Pinson & Riley, P.S.*, No. 14 CV 739, 2019 WL 1787547, at *7 (N.D. Ill. Apr. 24, 2019).

Midland admits that it engaged MCM to collect debts on its behalf, including Bielawski's.  *See* Defs.' SOF ¶ 5.  But, as described in Section III.C, there is a genuine dispute of fact as to whether Midland is a debt collector under the FDCPA.

---

[15]    Bielawski cites to *Torres*, but that case had at least one additional factor establishing the defendant's principal purpose of debt collection—its own corporate deponent admitted that "the only service" it provided was "as a debt owner."  2018 WL 1508535, at *5.

Accordingly, genuine issues of fact remain as to whether Midland may be vicariously liable for MCM's violation of § 1692e(8) in this case.

## IV. Conclusion

For the reasons stated herein, Bielawski's motion for summary judgment is granted in part and denied in part. Defendants' motion for summary judgment is denied. A status hearing is set for 9/18/19 at 9:00 a.m.

**IT IS SO ORDERED.**                    **ENTERED:    9/10/19**

_____
**JOHN Z. LEE**
**United States District Judge**